UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| TONY M. SMITH, ) | |
| ) | |
| Petitioner, ) | 2:11-cv-01697-PMP-GWF |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| GREGORY COX, *et al.*, ) | |
| ) | |
| Respondents. ) | |
| _____/ | |

Before the court for a decision on the merits is an application for a writ of habeas corpus filed by Tony M. Smith, a Nevada prisoner. ECF No. 5.

I. FACTUAL AND PROCEDURAL HISTORY

This case arises from the shooting death of Kevin Teate. Evidence presented at trial established that the following events occurred on the evening of August 6, 1997. Petitioner Smith and Teate were part of a gathering of people in a parking lot next to a Las Vegas convenience store. Smith and Teate exchanged words. Teate departed in a car to a nearby location, while Smith and his acquaintances walked to the same spot. At that location, additional words were exchanged. In response to Teate insulting Smith's girlfriend, Smith threatened to kill Teate. Subsequently, Teate said something to the effect that it was not a problem and attempted to leave. Smith drew a .38 caliber pistol and shot Teate in the head. Smith handed his gun to a friend, who fired additional shots. One of Teate's friends returned fire. In that exchange, Teate was shot again with a nine millimeter

bullet as he lay on the ground.  An autopsy revealed that either shot, independently, would have been fatal.

On February 1, 1999, a judgment of conviction was entered pursuant to a jury verdict finding Smith guilty of first degree murder with use of a deadly weapon.  Smith was sentenced to two consecutive terms of life without the possibility of parole.  Smith appealed.

On January 30, 2001, the Nevada Supreme Court filed an order of affirmance.  On November 1, 2001, Smith filed a state post-conviction petition for a writ of habeas corpus.  Although counsel was appointed in February of 2002, no activity appears on the docket until 2005, when new counsel was appointed.  In April of 2008, that counsel moved to withdraw, declaring that all communication with Smith had been unsuccessful.  That motion was granted.  While the court docket indicates that the case was "statistically closed" in October of 2010, it appears as if the state court has yet to enter a final order with respect to Smith's petition.

This court received Smith's federal habeas petition on October 21, 2011.  After payment of the filing fee, the petition was filed on December 9, 2011.

II.  STANDARDS OF REVIEW

This action is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA).  28 U.S.C. § 2254(d) sets forth the standard of review under AEDPA:

28 U.S.C. § 2254(d) sets forth the standard of review under AEDPA:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

2

For any habeas claim that has not been adjudicated on the merits by the state court, the federal court reviews the claim *de novo* without the deference usually accorded state courts under 28 U.S.C. § 2254(d)(1). *Chaker v. Crogan*, 428 F.3d 1215, 1221 (9th Cir. 2005); *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

III.  ANALYSIS OF CLAIMS

**Ground One**

In Ground One, Smith claims that his constitutional rights were violated because the trial court gave an improper instruction on premeditation and deliberation. According to Smith, the instruction was unconstitutional because it blurred the distinction between first and second degree murder and relieved the State of its burden of proof on an essential element of first degree murder.

The instruction on "premeditation and deliberation" that Smith claims was defective read as follows:

> Premeditation is a design, a determination to kill, distinctly formed in the mind at any moment before or at the time of the killing.
>
> Premeditation need not be for a day, an hour or even a minute. It may be as instantaneous as successive thoughts of the mind. For if the jury believes from the evidence that the act constituting the killing has been preceded by and has been the result of premeditation, no matter how rapidly the premeditation is followed by the act constituting the killing, it is willful, deliberate and premeditated murder.

ECF No. 17-18, p. 9.[1]

The Nevada statutes define first degree murder, in relevant part, as a "willful, deliberate and premeditated killing." Nev. Rev. Stat. § 200.030(1)(a). The use of the challenged instruction was condoned by the Nevada Supreme Court in *Kazalyn v. State*, 825 P.2d 578 (Nev. 1992), and is commonly referred to as the *Kazalyn* instruction. Eight years after *Kazalyn*, the Nevada Supreme Court ruled, in *Byford v. State*, 994 P.2d 700 (Nev. 2000), that the instruction was deficient because it

---

[1] References to page numbers in the record are based on CM/ECF pagination.

3

1  defined only premeditation and failed to provide an independent definition for deliberation. *See*
2  *Byford*, 994 P.2d at 713.
3        In *Babb v. Lozowsky*, the Ninth Circuit Court of Appeals gave an overview of the state and
4  federal court jurisprudence involving the *Kazalyn* instruction. *Babb*, 719 F.3d at 1026-28. For the
5  purposes of this case, suffice it to say that the Ninth Circuit's holding in *Polk v. Sandoval*, 503 F.3d
6  903 (9th Cir. 2007), regarding the constitutionality of the *Kazalyn* instruction is no longer good law in
7  light of intervening Nevada Supreme Court decisions (*Babb*, 719 F.3d at 1029), but it is nonetheless a
8  violation of due process to not use the new instructions announced in *Byford* in cases in which the
9  conviction was not final at the time of the *Byford* decision (*Babb*, 719 F.3d at 1029).
10       In ruling upon Smith's challenge to the use of the *Kazalyn* instruction, the Nevada Supreme
11 Court concluded as follows:

> Appellant also argues that an erroneous jury instruction on the meaning of premeditation (commonly called the *Kazalyn* instruction) violated his constitutional guarantees to due process, equal protection, and a reliable sentence. We conclude that appellant's arguments on this issue are without merit, based on our recent decision in *Garner v. State*, 116 Nev. ___, 6 P.3d 1013 (2000). In *Garner*, we concluded that because appellant had not objected at trial to the *Kazalyn* instruction, the "issue was not preserved for consideration on appeal unless use of the instruction constituted plain or constitutional error." 116 Nev. at ___, 6 P.3d at 1024 (citing *Walch v. State*, 112 Nev. 25, 34, 909 P.2d 1184, 1189 (1996)). This court then concluded that pursuant to *Byford v. State*, 116 Nev. 215 994 P.2d 700 (2000), "there was no such error." *Garner*, 116 Nev. at ___, 6 P.3d at 1024. "Our opinion in *Byford* concludes that the *Kazalyn* instruction does not fully define 'willful, deliberate, and premeditated,' and it provides other instructions for future use – but it does not hold that giving the *Kazalyn* instruction constituted error, nor does it articulate any constitutional grounds for its decsion." *Garner*, 116 Nev. at ___, 6 P.3d at 1024. "Use of the *Kazalyn* instruction in trials which predate *Byford* does not constitute plain or constitutional error. Nor do the new instructions required by *Byford* have any retroaction effect on convictions which are not yet final: the instructions are a new requirement with prospective force only." *Garner*, 116 Nev. at ___, 6 P.3d at 1025 (footnote omitted).
>
> In the present case, as in *Garner*, because appellant failed to object to the *Kazalyn* instruction, he failed to preserve this issue for appeal, absent plain or constitutional error. And because appellant's trial predated *Byford*, the district court's use of the *Kazalyn* instruction did not constitute plain or constitutional error. Accordingly, we conclude that this issue does not warrant reversal of appellant's conviction.

26 ECF No. 14-7, p. 5-6 (footnote omitted).

4

1    In *Nika v. State*, 198 P.3d 839 (2008), the Nevada Supreme Court determined that its
2 decision in *Garner* was wrong in holding that the federal Constitution did not require application of
3 the new rule in *Byford* to convictions that were not yet final at the time *Byford* was decided. *Nika*,
4 198 P.3d at 859. That holding does not factor into the AEDPA analysis, however, because it was
5 premised on state, not federal, law. *Babb*, 719 F.3d at 1030 n. 6.

6    Even so, the state supreme court's rejection of Smith's claim runs afoul of clearly established
7 federal law. In *Babb*, as in this case, the Nevada Supreme Court rejected the defendant's due process
8 challenge to the *Kazalyn* instruction on the ground that the *Byford* decision was issued after the
9 defendant's trial. *Babb*, 719 F.3d at 1025. Relying on *Bunkley v. Florida*, 538 U.S. 835 (2003), the
10 court in *Babb* concluded that, because the defendant's conviction had yet to become final when
11 *Byford* was issued, "it was an unreasonable application of established federal law and a violation of
12 Babb's due process rights for the Nevada court not to apply the change in *Byford*, which narrowed the
13 category conduct that can be considered criminal, to her case." *Id*. at 1032. Given the factual
14 similarity between the two cases, this court is bound by the holding in *Babb* and, therefore, must
15 conclude that the Nevada Supreme Court's rejection of Smith's claim is not subject to the deference
16 required by § 2254(d).

17    Nonetheless, Smith is entitled to relief only if the constitutional error was not harmless. *See*
18 *Babb*, 719 F.3d at 1033 (applying *Brecht* to the same constitutional error at issue in this case).
19 "Generally, . . .when considering whether erroneous instructions constitute harmless error, courts ask
20 whether it is reasonably probable that the jury would still have convicted the petitioner on the proper
21 instructions." *Id*. at 1034 (citation omitted).

22    Under *Byford*, the jury would have been given the following instruction on deliberation:

23    Deliberation is the process of determining upon a course of action to kill as a result of thought, including weighing the reasons for and against the action and
24    considering the consequences of the action.

25    A deliberate determination may be arrived at in a short period of time. But in all cases the determination must not be formed in passion, or if formed in passion, it
26    must be carried out after there has been time for the passion to subside and deliberation

5

       to occur.  A mere unconsidered and rash impulse is not deliberate, even though it includes the intent to kill.

*Byford*, 994 p.2d at 714.

       The evidence presented at trial establishes beyond a reasonable doubt that Smith deliberated about killing Teate in advance of doing so.  Smith brought a gun to the location where the shooting occurred.  Shortly prior to shooting Teate in the head, Smith threatened to kill Teate for insulting Smith's girlfriend.  Smith shot Teate as Teate was in the process of leaving the scene; and, in later discussing the incident with others, spoke dispassionately about having killed Teate and being prepared for the possible consequences.  The evidence supports a finding that Smith killed Teate in a cold, calculated manner, not because of a rash impulse formed in a moment of passion. *Compare*, *Winfrey v. McDaniel*, 487 Fed. App'x 331, 333 (9th Cir. 2012), *with Chambers v. McDaniel*, 549 F.3d 1191, 1200-01 (9th Cir. 2008) (concluding *Kazalyn* error was not harmless where defendant stabbed victim to death after a physical struggle over a knife) and *Polk v. Sandoval*, 503 F.3d 903, 912-13 (9th Cir. 2007) (concluding *Kazalyn* error was not harmless where defendant killed victim following a heated argument).  Given the abundance of evidence that the killing was deliberate, the erroneous *Kazalyn* instruction constituted harmless error in this case.

       Ground One is denied.

**Ground Two**

       In Ground Two, Smith alleges that his conviction and sentence are unconstitutional by virtue of the state court's delay in deciding his state post-conviction petition.  Understandably, Smith does not appear to have exhausted state court remedies for this claim.  Even so, this court may deny an unexhausted claim "when it is perfectly clear that the applicant does not raise even a colorable federal claim." *Cassett v. Stewart*, 406 F.3d 614, 623–24 (9th Cir. 2005); *see also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies in the courts of the State").

1          Ninth Circuit case law recognizes a due process right to a speedy direct appeal. *See*, *e.g.*, *Coe*
2  *v. Thurman*, 922 F.2d 528, 530 (9th Cir. 1990) (holding "excessive delay in the appellate process may
3  also rise to the level of a due process violation"). However, neither the Ninth Circuit nor the Supreme
4  Court has ever extended this holding to apply to delays in adjudicating a post-conviction petition. *See*
5  *Franzen v. Brinkman*, 877 F.2d 26, 26 (9th Cir. 1989) (holding that "a petition alleging errors in the
6  state post-conviction review process is not addressable through habeas . . . proceedings"). Moreover,
7  "a due process violation cannot be established absent a showing of prejudice to the appellant." *Coe*,
8  922 F.2d at 532. Smith has not established that he has been prejudiced in the manner contemplated
9  by *Coe*.

10         Smith is not entitled to habeas relief based on Ground Two.

11   IV.  CONCLUSION

12         For the reasons set forth above, Smth's petition for habeas relief is denied.

13                         *Certificate of Appealability*

14         This is a final order adverse to the petitioner. As such, Rule 11 of the Rules Governing
15  Section 2254 Cases requires this court to issue or deny a certificate of appealability (COA).
16  Accordingly, the court has *sua sponte* evaluated the claims within the petition for suitability for the
17  issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir.
18  2002).

19         Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a
20  substantial showing of the denial of a constitutional right." With respect to claims rejected on the
21  merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment
22  of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing
23  *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if
24  reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a
25  constitutional right and (2) whether the court's procedural ruling was correct. *Id.*
26

1    Having reviewed its determinations and rulings in adjudicating Smith's petition, the court finds that reasonable jurists could debate whether the constitutional error arising from the trial court's use of the *Kazalyn* instruction was harmless.  As such, the court shall issue a certificate of appealability as to its resolution of that issue.  A certificate shall not issue for any other procedural or substantive ruling.

**IT IS THEREFORE ORDERED** that petition for writ of habeas corpus (ECF No. 5) is DENIED.  The Clerk shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that a certificate of appealability is GRANTED with respect to the following issue:  Whether this court erred in concluding that the due process violation resulting from the state trial court's use of the *Kazalyn* instruction constituted harmless error.

Dated this _28th_ day of April, 2014.

_____
UNITED STATES DISTRICT JUDGE